**William C. MORROW, Jimmy Smith, Mike Bradford, Juluis Brooks, and Randy Prude, Appellants,**

v.

**TRUCKLOAD FIREWORKS, INC., Appellee.**

No. 11–06–00197–CV.

Court of Appeals of Texas, Eastland.

March 22, 2007.

<hr>

Russell Malm, County Attorney, Midland, for appellants.

C.H. (Hal) Brockett, Jr., Ryan J. McNeel, Brockett & McNeel, LLP, Midland, for appellee.

Panel consists of WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

RICK STRANGE, Justice.

The trial court entered a temporary restraining order enjoining enforcement of Midland County's Declaration of Disaster and Executive Order. Midland County[1] appeals the trial court's decision to deny its motion to dismiss for lack of jurisdiction. We vacate the trial court's injunction and remand.

### I. *Background Facts*

On June 15, 2006, Midland County Judge William C. Morrow issued a Declaration of Disaster for Midland County and an Executive Order banning the outdoor use of all combustibles, including fireworks, in Midland County.[2] Authorized public displays of fireworks were excluded from the ban. A violation of the executive order was a Class C misdemeanor. Midland County withdrew the declaration and executive order on June 23, 2006, because of recent rain and a favorable weather forecast, but on June 27, 2006, a new disaster declaration and executive order were executed. The June 27 declaration and order were identical to the June 15 declaration and order and will be referenced in this opinion as the "fireworks ban."

Truckload Fireworks, Inc. filed suit after the execution of the original declaration and executive order and requested injunctive relief.[3] Midland County filed a

---

1. Appellant William C. Morrow was the Midland County Judge at the time of this suit; appellants Jimmy Smith, Mike Bradford, Juluis Brooks, and Randy Prude were Midland County Commissioners.

2. The ordinance also prohibited discarding any flammable materials, such as cigarettes,

and it restricted outdoor welding, cutting, and grinding operations.

3. Truckload conceded Midland County's ability to regulate the use of restricted fireworks. *See* TEX. LOC. GOV'T CODE ANN. § 352.051(a)(1) (Vernon 2005) (which defines "[r]estricted fireworks" as skyrockets with sticks and mis-

motion to dismiss for lack of jurisdiction. The trial court took Midland County's motion under advisement, conducted an evidentiary hearing, and granted Truckload's request for injunctive relief. The trial court did not expressly rule on the motion to dismiss but, by granting Truckload affirmative relief, denied the motion by implication.

## II.  *Issues*

Midland County contends that the trial court erred by not dismissing Truckload's suit for lack of subject-matter jurisdiction.[4] Before we address the trial court's jurisdiction, however, we must first determine our own because the fireworks ban has expired.

## III.  *Has this Controversy Become Moot?*

■■■  Counsel acknowledged during oral argument that the fireworks ban has expired. Because the injunction merely prohibited Midland County from enforcing the ban, its expiration makes this controversy moot. *See Murphy v. Hunt,* 455 U.S. 478, 481, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (a case becomes moot when the issues are no longer live or when the parties lack a legally cognizable interest in the outcome). If a case becomes moot, the parties lose standing to maintain their claims. *Williams v. Lara,* 52 S.W.3d 171, 184 (Tex.2001). Accordingly, this court asked counsel why the case should not be dismissed. Midland County responded that this suit falls under the "capable of repetition, yet evading review" exception

to the mootness doctrine. Midland County has since provided this court with a letter brief containing citations to several cases discussing the doctrine. Truckload has advised the court that it has no other authority, but has not advocated a position on the mootness issue.

■■■  The capable of repetition, yet evading review exception applies infrequently. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (the doctrine is exceptional and applies only when the plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality). To invoke the exception, a party must prove that the challenged action was too short in duration to be litigated fully before the action ceased or expired and that a reasonable expectation exists that the same complaining party will be subjected to the same action again. *Murphy,* 455 U.S. at 482, 102 S.Ct. 1181.

The first element is easily satisfied. Because the Fourth of July fireworks season is extremely short and the ban was executed on June 27, it was impossible for the parties to fully litigate this action before their controversy became moot.[5] The second element is more problematic, but we believe that it too is satisfied.

We can take judicial notice that Midland County's average annual rainfall is 14.80 inches; that in seven of the last ten years Midland County's yearly precipitation was below average; that in five of these years Midland County received less than ten

---

siles with fins). Truckload's suit contested the county's authority to regulate any other type of firework.

4.  Midland County's brief states this argument in three issues. The first two concern procedural questions relating to our ability to hear this interlocutory appeal. Truckload does not dispute this court's jurisdiction. Midland

County's first two issues are sustained, and we will limit our review to Midland County's substantive issue.

5.  Truckload's owner testified that the season lasts eleven days: from June 24 through midnight, July 4.

inches of rain;[6] and that in December 2005, Midland County issued a similar fireworks ban. Truckload has advised the court that it and Midland County litigated a similar ban in 1996. Collectively, this provides a reasonable expectation that Midland County will continue to suffer from drought conditions, that it will respond to drought conditions during fireworks seasons by banning the use of all fireworks, and that Truckload will challenge any ban of nonrestricted fireworks. Consequently, we believe that the exception applies and that we are not required to dismiss this case for mootness.

## IV.  *Discussion*

### A.  *Standard of Review.*

■■■ The question of subject-matter jurisdiction is a legal question. Therefore, we review the trial court's order under a de novo standard of review. *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002). We are not required to look solely to the pleadings, but may consider evidence relevant to the jurisdictional issues raised. *Tex. Dep't of Criminal Justice v. Miller,* 51 S.W.3d 583, 587 (Tex.2001). We do not look to the merits of the case, but accept Truckload's allegations as true. *City of Longview v. Head,* 33 S.W.3d 47, 51 (Tex.App.-Tyler 2000, no pet.).

### B.  *Did the Trial Court Have Subject– Matter Jurisdiction?*

Midland County argues that the fireworks ban constitutes a penal ordinance and that the trial court did not have jurisdiction to enjoin its enforcement because the court was sitting as a court of equity. Truckload argues that trial courts have broad supervisory authority over commissioners courts, including the power to enjoin them from taking illegal action.

Truckload concludes that, because it pleaded that Midland County did not have the authority to ban all fireworks, the trial court had jurisdiction to determine whether the ban was illegal and, if so, to enjoin any further action by Midland County.

Neither party asks us to determine whether Midland County had the authority to ban the use of nonrestricted fireworks. Midland County's position makes the question immaterial because jurisdiction is a threshold question. Truckload counsels us that the determination of jurisdiction and the resolution of the merits are separate issues and reminds us that Midland County's appeal does not address the propriety of the injunction. Our resolution of this appeal makes it unnecessary to determine the extent of a county's authority to regulate the use of nonrestricted fireworks, and we express no opinion on the legality of the fireworks ban.

### 1.  *The General Rule.*

■■■ The general rule is that courts of equity do not have jurisdiction to interfere with the enforcement of a criminal statute. Instead, the meaning and validity of a penal statute or ordinance should ordinarily be determined by a court exercising criminal jurisdiction. *Passel v. Fort Worth Indep. Sch. Dist.,* 440 S.W.2d 61, 63 (Tex.1969). Midland County contends that the fireworks ban was a penal ordinance because a violation was a Class C misdemeanor and carried a potential fine of $500. Truckload responds that the ban was an administrative order and, therefore, that the general prohibition did not apply.

Truckload relies upon *City of San Antonio v. Rankin,* 905 S.W.2d 427, 429 (Tex. App.-San Antonio 1995, no writ). In *Rankin,* the City of San Antonio adopted an

---

6.  *See*      www.srh.noaa.gov/maf/HTML/100      TESTMAF.htm

ordinance that required fire department supervisors to file annual financial disclosure statements and financial involvement records with the city clerk. The failure to do so was a Class C misdemeanor. The city's fire chief sent the supervisors a memo directing them to complete the disclosure forms and return them to his office by a stated deadline. The supervisors filed suit and successfully obtained a temporary restraining order that prohibited the city from prosecuting or taking any internal disciplinary action against them for failing to file disclosure statements.

The disciplinary action prohibition was critical. The San Antonio Court noted that courts of equity normally do not have jurisdiction to interfere with the enforcement of a criminal statute, but it held that the trial court had jurisdiction in this instance because the fire chief's memo was considered a direct order and thus subjected the supervisors to employment-related disciplinary action in addition to criminal prosecution. *Rankin,* 905 S.W.2d at 429–30; *see also Passel,* 440 S.W.2d at 64 (court had jurisdiction because plaintiffs sought an injunction against enforcement of a school district rule adopted pursuant to an unconstitutional statute).

No dual process was present here. The fireworks ban did not create an ancillary administrative process, and Truckload's requested injunction was directed solely at the enforcement of the ban itself.[7] Truck-

load argues that the ban "sought to institute Midland County's administrative rights" granted under state law. Regardless of Midland County's intentions or beliefs, it did not take or threaten any administrative action. The only possible consequence for a violation of the ban was a fine. We agree, therefore, that the ban was a penal ordinance.

Truckload argues that, irrespective of the nature of the ban, the Texas Constitution gives district courts general supervisory control over the commissioners court and the jurisdiction to enjoin illegal acts. *See* TEX. CONST. art. V, § 8 ("The District Court shall have appellate jurisdiction and general supervisory control over the County Commissioners Court, with such exceptions and under such regulations as may be prescribed by law."). Truckload cites no case where this authority was extended to enjoining enforcement of a criminal ordinance. The cases it does cite involve administrative functions like establishing salaries[8] or supervising county employees.[9] Because the fireworks ban was a penal ordinance, the trial court's general supervisory authority did not empower it to enjoin further enforcement of that ban.

### 2. The Morales Scenarios.

Constitutional challenges to criminal statutes can arise in a variety of contexts. To aid trial courts in determining their jurisdiction, the Texas Supreme Court has grouped these into four scenarios. The

---

**7.** Truckload requested an injunction that enjoined "the enforcement of the Declaration and the Executive Order insofar as they purport to ban the sale or use of any fireworks other than restricted fireworks in Midland County." The Texas Supreme Court has noted that equity courts do not have the jurisdiction to grant that type of relief. *See State v. Morales,* 869 S.W.2d 941, 942 n. 2 (Tex.1994) (holding that the trial court did not have jurisdiction to enter a declaratory judgment that Texas sodomy statute was unconstitutional and noting that plaintiffs were not seeking

to enjoin enforcement of a rule or policy promulgated pursuant to the sodomy statute but were seeking an injunction against prosecutions under the statute).

**8.** *See, e.g., Wichita County v. Bonnin,* 182 S.W.3d 415 (Tex.App.-Fort Worth 2005, pet. denied).

**9.** *See, e.g., Comm'rs Court of Titus County v. Agan,* 940 S.W.2d 77 (Tex.1997).

classification of a particular dispute into one of the four scenarios determines whether a court has jurisdiction. The four scenarios are:

(1) the statute is enforced and the party is being prosecuted;

(2) the statute is enforced and the threat of prosecution is imminent, although the party has yet to be prosecuted;

(3) there is no actual or threatened enforcement of the statute and the party does not seek an injunction against its enforcement, but the statute is nonetheless integrally related to conduct subject to the court's equity jurisdiction; and

(4) there is no actual or threatened enforcement of the statute and no complaint of specific conduct remediable by injunction.

*State v. Morales*, 869 S.W.2d 941, 944–45 (Tex.1994).[10] *Morales* illustrates the fourth scenario. There, the plaintiffs challenged the constitutionality of the Texas sodomy statute. The attorney general contended that the statute had not been, nor likely would be, enforced against the plaintiffs. Nonetheless, the plaintiffs alleged that the statute stigmatized them as criminals, jeopardized their careers, and encouraged the commission of hate crimes against them. However, because the statute was not being enforced and plaintiffs could show no specific instance of injury to their careers, the supreme court held that the trial court lacked jurisdiction to determine its constitutionality. 869 S.W.2d at 947. The third scenario is represented by cases such as *Rankin* where injunctive relief was sought to prevent administrative enforcement of a rule or regulation adopted for the purpose of implementing the statute. 905 S.W.2d at 429.

The first and second scenarios provide a court of equity with jurisdiction, but require a vested property right to invoke. *See Morales*, 869 S.W.2d at 945 n. 8; *Passel*, 440 S.W.2d at 63. *Property* rights and *personal* rights are not synonymous. 869 S.W.2d at 946. The concept of personal rights is broader and includes the right to conduct a specific activity. However, the right to conduct an activity, such as using property for a specific purpose, does not equate that ·personal right with a vested property right.

*3. Vested Property Rights.*

■ The term "property right" refers to any type of right to specific property whether it is personal or real property, tangible or intangible. BLACK'S LAW DICTIONARY 1323 (7th ed.1999). A vested right "has some definitive, rather than merely potential existence." *City of La Marque v. Braskey*, 216 S.W.3d 861, 864 (Tex.App.-Houston [1st Dist.] 2007, pet. filed). Truckload has a property right in the physical items, such as inventory, that it owns. It argues that it also has a vested property right in the operation of its fireworks business. Truckload alleged in its original petition that the fireworks ban violated its· right to engage in interstate commerce, its right to engage in a business enterprise involving interstate commerce, and its rights under 42 U.S.C. § 1983. At the evidentiary hearing, it also argued a vested property interest in its First Amendment rights.[11] Truckload's

---

10. The *Morales* opinion contains a detailed explanation of why and how courts of equity were created and operated, and the ensuing reasons for their limited jurisdiction. 869 S.W.2d at 943–44.

11. Truckload's owner testified that a fireworks association had filed suit in federal court alleging First Amendment issues; but he did not identify a First Amendment claim on behalf of Truckload, and no First Amendment claim was pleaded.

brief directs us to allegations that it had invested in excess of $500,000 to purchase and maintain inventory, that it was contractually bound under numerous leases for locations in Midland County, and that banning the use of fireworks would destroy Truckload's business and cause an unrecoverable loss of income.[12] During the evidentiary hearing, Truckload's owner, Jim Harris, testified that he had spent over $300,000 for inventory, over $25,000 for advertising, and over $25,000 for leases and associated costs for his Midland County locations.[13] Truckload's pleadings are clearly sufficient to articulate a claim that a total ban on the use of fireworks would result in a tremendous financial loss. This loss, even though tangible and significant, is insufficient to constitute a vested property right because it represents losses due to restrictions on personal rights.

The distinction between personal rights and vested property rights is illustrated by the *Braskey* decision. 216 S.W.3d 861. Braskey operated a cat shelter. The City of La Marque passed an ordinance prohibiting the operation of a kennel within 500 feet of a dwelling, school, or church. Braskey's shelter was located within 100 feet of three residences. She filed suit seeking an injunction against the city and claimed that enforcement of the ordinance would cause her facility to close, the death of cats housed at the shelter, and the potential imposition of fines or confinement. *Id.* The Houston First Court recognized Braskey's property right in the facility. It held, however, that her use of the facility as a cat shelter was not a vested property right. The court reached this conclusion by noting that Braskey did not have a constitutionally protected right to use her property as a shelter. *Id.* at 864. The damages that she faced if the shelter were closed concerned a particular use of her property and not the right to use the property. Consequently, the trial court was without jurisdiction to hear Braskey's suit. *Id.* at 864.

Truckload's allegations present a similar situation.[14] When determining whether the trial court has jurisdiction, we construe pleadings liberally in plaintiff's favor. *Tex. Dep't of Transp. v. Ramirez,* 74 S.W.3d 864, 867 (Tex.2002). But, the petition must allege facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993). We have assumed that each of the factual statements made by Truckload in its original petition are true, and we have construed the evidence introduced at the temporary injunction hearing in Truckload's favor. Truckload, however, has not identified a vested property right but, at

12. Truckload argues in its brief that the fireworks ban would destroy any value it had in its fireworks inventory. Truckload does not explain how this would occur, but because it pleaded that it had invested a significant sum in inventory and that the ban would destroy its business, we have accepted this statement as true.

13. Truckload also sells fireworks in Ector County and in six to eight other surrounding towns.

14. Truckload states in its brief that intermediate courts have set forth inconsistent standards for determining whether a trial court has subject-matter jurisdiction and that some courts require only an allegation of unconstitutionality and irreparable injury to vested property rights while others seemingly require an allegation of unconstitutionality and proof of irreparable injury to a vested property right. For this later proposition, Truckload cites *Sterling v. San Antonio Police Department,* 94 S.W.3d 790 (Tex.App.-San Antonio 2002, no pet.). We do not read *Sterling* to impose a different requirement than any other intermediate court. Moreover, in our review of this case, we have assumed that Truckload's factual allegations are true.

best, has only identified a personal right to sell and display fireworks.

The fireworks ban did not prohibit Truckload from selling fireworks or conducting authorized displays of fireworks,[15] nor was Truckload required to surrender its inventory. Nonetheless, the ban unquestionably impacted Truckload's business and would have caused a significant loss of income if not enjoined. But, even if the ban had prohibited the sale, rather than the use, of all fireworks and thus eliminated Truckload's Midland County retail business, no vested property right would be implicated because a property owner has no absolute right to use his property for a particular purpose. *See City of Univ. Park v. Benners,* 485 S.W.2d 773, 778 (Tex.1972) (property owners do not acquire a constitutionally protected vested right in property uses once commenced or in zoning classifications once made); *Weatherford v. City of San Marcos,* 157 S.W.3d 473, 483 (Tex.App.-Austin 2004, pet. denied) (property owner had no vested property right in any particular zoning classification); *Hang On III, Inc. v. Gregg County,* 893 S.W.2d 724, 726 (Tex. App.-Texarkana 1995, writ dism'd by agr.) (property owner did not have a vested property right in operating sexually oriented business on particular property).

Truckload alternatively argues that the trial court had jurisdiction because the fireworks ban would destroy its property before the ban's validity could be tested in court. Truckload cites *City of Austin v. Austin City Cemetery Ass'n,* 87 Tex. 330, 28 S.W. 528 (1894); *Robinson v. Jefferson County,* 37 S.W.3d 503 (Tex.App.-Texarkana 2001, no pet.); and *City of Dallas v. Dallas County Housemovers Assoc.,* 555 S.W.2d 212 (Tex.Civ.App.-Dallas 1977, no writ), for the proposition that the destruction of its business during the pendency of any litigation implicates a vested property right. However, in each of these cases the challenged ordinance operated against both a business and the business's customers. Midland County's fireworks ban did not criminalize the sale or possession of fireworks in Midland County or make Truckload liable for any customer that did use its fireworks in Midland County.

The supreme court distinguished *Austin City Cemetery Ass'n* in its *Morales* opinion by noting that, if a party faced no prosecution under the challenged ordinance, it had no *in terrorem* effect. 869 S.W.2d at 944 n. 7. Truckload did not plead that it faced criminal prosecution, and no testimony was introduced at the hearing of any threatened criminal prosecution.[16] Because Truckload faced no prosecution, *Austin City Cemetery Ass'n* does not apply.

### V. *Holding*

Because Truckload did not identify a vested property right, the trial court did not have jurisdiction to enjoin enforcement of the fireworks ban. Midland County's

---

**15.** The fireworks ban excluded public displays that met the requirements of Tex. Occ.Code Ann. § 2154.204 (Vernon 2004). Harris testified that he was also in the fireworks display business and that he had lost $10,000 in business because of the ban. Harris's testimony referred to lost displays "this fiscal year." From the context, it is not entirely clear if he was referring to losses caused by the June 15 and June 27 orders or if he also included the December ban. His pleading only refers to retail business losses. We have assumed that

at least some of the lost display revenue was attributable to the June 27 order and was incurred by Truckload, but for the same reasons that Truckload has no vested property right in its retail business, it has no vested property right in any display business.

**16.** Harris did testify that the county fire marshal went to one of his locations and talked to his customers. The record does not reveal the substance of that conversation.

241

third issue is sustained. We vacate the trial court's injunction and remand this cause to that court with instructions to dismiss for want of jurisdiction.